U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for New Century Bank, <br><br> Plaintiff, <br><br> v. <br><br> FAYE T. PANTAZELOS, JOHN R. BRINKMAN, GEORGE METZGER, ROBERT GREMLEY, RICHARD J. WHOLEY AND THOMAS J. ROMANO, <br><br> Defendants. | No. 13 C 2246 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On March 26, 2013, Plaintiff Federal Deposit Insurance Corporation ("FDIC"), in its capacity as Receiver for New Century Bank ("NCB"), filed a six-count Complaint against Defendants Faye T. Pantazelos, John R. Brinkman, George Metzger, Robert C. Germley, Richard J. Wholey, and Thomas J. Romano (collectively, "Defendants"). (R. 1, Compl.) The Complaint alleges the following: Count I – Negligence – Approval of Target Loans; Count II – in the alternative – Breach of Fiduciary Duty – Approval of Target Loans; Count III – in the alternative – Gross Negligence (12 U.S.C. § 1821(k)) – Approval of Target Loans; Count IV – Negligence – Origination, Recommendation, and/or Administration of Target Loans; Count V – in the alternative – Breach of Fiduciary Duty – Origination, Recommendation, and/or Administration of Target Loans; Count VI – Gross Negligence (12 U.S.C. § 1821(k)) – Origination, Recommendation, and/or Administration of Target Loans. Defendants filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure

1

("Rule") 12(b)(6). (R. 22, Mot.) Defendants also filed a motion to seal their memorandum in support of their motion to dismiss. (R. 25, Mot. to Seal.) For the reasons set forth below, the Court grants Defendants' motion to seal and denies Defendants' motion to dismiss.

## BACKGROUND

New Century Bank ("NCB"), an Illinois-chartered bank, was founded in 1999 by Defendant Faye T. Pantazelos. (Compl. ¶ 15.) Its main office and two of its branches were located in Chicago, Illinois and a third branch was located in Lincolnshire, Illinois. (*Id.* ¶ 16.) On April 23, 2010, the Illinois Department of Financial and Professional Regulation ("IDFPR") closed NCB and appointed the Federal Deposit Insurance Corporation as receiver. (*Id.* ¶ 4.) Pursuant to that appointment, the FDIC succeeded to all rights, titles, powers and privileges of NCB and the stockholders, depositors and other parties interested in the affairs of NCB. *See* 12 U.S.C. § 1821(d)(2)(A)(i) (2010).

The FDIC, as receiver for NCB, filed the instant Complaint against Faye T. Pantazelos, John R. Brinkman, George Metzger, Robert C. Gremley, Richard J. Wholey, and Thomas J. Romano in an effort to recover approximately $33 million in losses that the bank suffered on numerous commercial real estate ("CRE") loans. (Compl. ¶ 1.) Except for Romano, each Defendant was a member of either NCB's Officers Loan Committee ("OLC") or the Directors Loan Committee ("DLC"), or both, at various time periods. (*Id.* ¶¶ 5-11.) The OLC and the DLC were responsible for reviewing proposed loans and considering whether and on what terms to extend credit to borrowers. (*Id.* ¶ 19.) Pantazelos was the Founder, President, and CEO of NCB from 1999 until the Bank closed. (*Id.* ¶ 5.) Pantazelos served on both the OLC and the DLC during her entire tenure at NCB. (*Id.* ¶ 5.) Brinkman and Metzger served on both the OLC and the DLC at various time periods. (*Id.* ¶ 6-7.) Gremley and Wholey were both Directors of

2

NCB and both served on the DLC. (*Id.* ¶¶ 8-9.) The FDIC refers to these Defendants as the "D&O Defendants." (*Id.* ¶ 10.) The FDIC alleges that the D&O Defendants acted negligently (Count I), breached their fiduciary duties (Count II), and acted grossly negligent (Count III) by disregarding the Bank's loan policies, prudent lending practices, and regulatory warnings in connection with various CRE and other loans (collectively, the "Target Loans"). (*Id.* ¶¶ 113-128.)

Romano was Senior Vice President of Commercial Lending at NCB from 2005 to 2010, but did not serve on either the OLC or the DLC at any time. (Compl. ¶ 11.) Rather, Romano was responsible for originating and recommending potential loans for the OLC and the DLC to consider. (*Id.* ¶¶ 11, 22, 131.) The FDIC alleges that Romano acted negligently (Count I), breached his fiduciary duties (Count II), and acted in a grossly negligent manner (Count III) in sourcing and proposing various loans. (*Id.* ¶¶ 129-144.)

The FDIC contends that the D&O Defendants each voted to approve four or more of the Target Loans and that Romano "originated, recommended, and/or administered the Pine Ridge Club, Harp Des Plaines, GCC Merrillville Venture, and Eagle American/18 Leasing Target Loans." (Compl. ¶ 22.) The FDIC alleges that between April 2005 and July 2008, the Defendants furnished "numerous loans in violation of the Bank's loan policy and sound and prudent banking practices." (*Id.* ¶ 21.) Specifically, the FDIC argues that "each Target Loan exhibited one or more of the following violations of the Bank's loan policy: (i) failing to establish adequate debt repayment programs; (ii) extending credit in excess of permitted LTV ratio limits; (iii) failing to adhere to required debt-to-income ratios; (iv) permitting debt service coverage ratios below minimum requirements; (v) relying on outdated, unverified, and

3

inadequate financial information for borrowers and guarantors; and (vi) extending credit outside the Bank's normal trade area." (*Id.* ¶ 21.)

Four of the Target Loans – AG Marketplace, AG Las Vegas, Gull Brothers South Beach, and Tam Drive – financed projects in Las Vegas, Nevada. (Compl. ¶¶ 23, 35, 41, 82.) The FDIC alleges that these loans violated NCB's loan policies because, among other things, the collateral's location was outside of NCB's target geographic region. (*Id.* ¶¶ 24, 36, 42, 83.) The FDIC also alleges that the Pine Ridge Club, GCC Merrillville Venture, and 600 Waukegan loans violated the Bank's policies and sound banking practices because repayment was highly speculative. (*Id.* ¶¶ 48, 70, 108.) Furthermore, the repayment of the loans approved for the Harp Des Plaines, Madison Racine, Regency of Park Ridge, and Lincolnwood Town Plaza I was highly speculative, in violation of the Bank's policies, because repayment was dependent on to-be-obtained construction loans. (*Id.* ¶¶ 58, 77, 89, 95.) The FDIC alleges that the Canzorini Enterprises and Normantown Prairie loans violated NCB's policies because the guarantors' debt to income ratio exceeded the Bank's 40% policy limit. (*Id.* ¶¶ 30, 64.) Also, according to the FDIC, the Eagle American/18 Leasing loan violated the Bank's policies because the guarantors lacked sufficient assets to provide an adequate source of repayment for the loan. (*Id.* ¶ 102.)

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation

omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

**ANALYSIS**

**I.      Motion to Seal**

The Court grants Defendants' motion to seal their memorandum in support of their motion to dismiss.[1] Defendants cite to documents identified as "Confidential" pursuant to the Agreed Protective Order. (Mot. to Seal ¶¶ 2-3.) The FDIC agrees that these documents are confidential. (R. 38, Seal Resp. at 2, n 2.) The FDIC, however, contests the sealing on the basis that the documents are not properly before the Court on Defendants' motion to dismiss. (*Id*. at 2.) The FDIC's argument, therefore, relates to whether the Court should consider these documents when ruling on Defendants' motion to dismiss – which the Court addresses below – not whether they should be sealed. To protect the sensitive information from the confidential documents, pursuant to the Agreed Protective Order, Defendants may file their memorandum under seal.

---

[1] Defendants previously filed a public redacted version of this memorandum. (R. 24.)

## II. Motion to Dismiss

### A. Documents Considered

Defendants attempt to utilize numerous exhibits to dismiss the FDIC's Complaint by pointing out purported contradictions between those documents and the FDIC's allegations. These documents, however, do not warrant dismissal.

The law is clear that a motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the pleadings, and as such, the Court's "consideration of matters outside the pleadings is not generally permitted," unless the Court converts the motion into one for summary judgment pursuant to Rule 12(d). *See McIntyre v. McCaslin*, No. 11 C 50119, 2011 WL 6102047, at \*4 (N.D. Ill. Dec. 7, 2011) (citing *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). An exception to this general rule exists where the parties present records "to which the Complaint ha[s] referred" and that are "concededly authentic," and "central" to the claims presented. *Santana v. Cook Cnty. Bd. of Review*, 679 F.3d 614, 619 (7th Cir. 2012) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009)). Another exception includes documents that are attached to the complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("Because the letter was attached to the complaint, it became a part of it for all purposes, and so the judge could consider it in deciding the motion to dismiss without having to convert the motion to one for summary judgment.") (internal citations omitted). Here, Defendants contend that the Court should consider the exhibits to its motion to dismiss because the Complaint references and incorporates those documents. The Court disagrees.

First, the FDIC did not reference Exhibits 1-3 and 20-21 in its Complaint and it is unclear what Exhibit 19 is as Defendants merely reference it as "the 2007 Report." (Mem. at 14.) The Court, therefore, will not consider these exhibits.

Second, the FDIC may have referenced the other exhibits, which consist of an April 2005 edition of NCB's loan policy (Ex. 4) and numerous loan approval memoranda ("LAMs") (Ex. 5-18), in the Complaint as the Complaint references a "loan policy" and certain LAMs. (*See, e.g.,* Compl. ¶¶ 17-20, 24, 36, 58.) It is unclear from the face of these documents, however, whether they are concededly authentic and what their import might be at this stage. One issue, for example, is that there is no indication whether the 2005 Edition of the NCB loan policy is the loan policy that governed the transactions and loans at issue in the Complaint.

Furthermore, these documents do not, on their face, "contradict the FDIC's allegations with respect to eleven loans" as Defendants contend. (Mem. at 5.) Defendants spend eight pages – before starting the "Argument" section of their brief – describing these purportedly erroneous allegations. (*Id.* at 5-13.) Defendants, however, merely offer their own interpretation of the LAMs and the 2005 Edition of the NCB loan policy – an interpretation that the Court need not adopt. *See, e.g., Forrest v. Universal Sav. Bank, F.A.,* 507 F.3d 540, 542 (7th Cir. 2007) ("A court is not bound by the party's characterization of an exhibit and may independently examine and form its own opinions about the document."). Defendants also add additional facts not included in either the Complaint or the purportedly incorporated exhibits in an attempt to refute the FDIC's allegations. It is premature for the Court to offer an interpretation of these documents – if in fact the Court can interpret them as a matter of law at all – when the parties have not briefed the issue and they are lengthy, complex documents. Moreover, the FDIC does not allege breach of any agreement, but rather alleges negligence and breach of fiduciary duty

claims, and utilizes these documents as examples of certain guidelines for Defendants' conduct. *See, e.g., Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998) (stating that the exception allowing a court to consider a document attached to a motion to dismiss is "a narrow exception aimed at cases interpreting, for example, a contract."). The Court, therefore, will not consider Defendants' exhibits at this stage.

If the Court had considered Defendants' exhibits, however, the result would be the same because Defendants' arguments – addressed below – do not directly rely upon these documents and these documents, as discussed above, are not sufficiently clear on their face to directly undermine or contradict specific allegations to justify dismissal of the FDIC's claims.

### B. Sufficiency of the Allegations

#### 1. The Illinois Banking Act and NCB's Bylaws

Defendants argue that the Illinois Banking Act and NCB's bylaws bar the FDIC's breach of fiduciary duty and negligence claims. Defendants attach what they claim to be NCB's bylaws to their memorandum (Ex. 20), yet, as discussed above, the FDIC did not reference and incorporate that document into its Complaint. These bylaws, therefore, are not properly before the Court at this stage. *F.D.I.C. ex rel. Wheatland Bank v. Spangler*, 836 F. Supp. 2d 778, 792 (N.D. Ill. 2011) ("Defendants' attempt to introduce documents purporting to show that the Illinois Banking Act shields Defendants from liability is premature.") Furthermore, Defendants "have not cited any legal authority supporting their unstated premise that the FDIC[] must plead around this statute in order to state a claim for relief based on negligence" or breach of fiduciary duty." *F.D.I.C. v. Giannoulias*, No. 12 C 1665, 2013 WL 170003, at *4-5 (N.D. Ill. Jan. 16, 2013). Any failure by the FDIC to combat this affirmative defense in its Complaint, therefore, is not fatal. *See, e.g., F.D.I.C. v. Saphir*, No. 10 C 7009, 2011 WL 3876918, at *5 (N.D. Ill. Sept.

1, 2011) (refusing to dismiss a complaint based on the Illinois Banking Act and the defendant's bylaws because such argument constituted an affirmative defense); *see also Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009).

### 2. Duplicative Claims

Defendants argue that Counts I and II – negligence and breach of fiduciary duty – are duplicative, as are Counts IV and V, which allege negligence and breach of fiduciary duty against Romano. (Mem. at 16.) Although the conduct at issue in these counts is the same, the FDIC has properly pled Count II as an alternative to Count I and Count V as an alternative to Count IV. Rule 8(d)(2) permits such alternative pleading. Fed. R. Civ. P. 8(d)(2); *see also F.D.I.C. v. Giannoulias,* 918 F. Supp. 2d 768, 775 (N.D. Ill. 2013) (refusing to dismiss that negligence and breach of fiduciary duty claims as duplicative because the plaintiff pled them in the alternative). The FDIC, therefore, may proceed with these claims in the alternative.

### 3. Business Judgment Rule

Defendants contend that the business judgment rule protects Defendants from liability. (Mem. at 17.) "The business judgment rule is a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Abbott Labs. Derivative Shareholders Litig.*, 325 F.3d 795, 808 (7th Cir. 2003); *see also Br.d of Dirs. of Greenbrier Condo. Ass'n v. Greenbrier Develop. Assocs., LLC*, No. 1–12–1383., 2013 WL 3820927, at *8 (Ill. App. Ct. July 19, 2013.) There is disagreement within this district whether a defendant may assert the business judgment rule as a defense at the motion to dismiss stage. *Compare F.D.I.C. v. Saphir,* No. 10 C 7009, 2011 WL 3876918, *5-9 (N.D. Ill. Sept. 1, 2011) (considering the business judgment rule an affirmative defense) *with F.D.I.C. v. Spangler,* 836 F. Supp. 2d 778,

792 (N.D. Ill. 2011) (finding the business judgment rule is not an affirmative defense). This distinction is significant because the FDIC is not required to plead facts in the Complaint to anticipate and defeat affirmative defenses. *See Brooks,* 578 F.3d at 579.

The Court need not resolve this disagreement here, however, because, even if the business judgment rule is not an affirmative defense, the FDIC's claims would survive its invocation at this stage. It is a "prerequisite to the application of the business judgment rule that the directors exercise due care in carrying out their corporate duties. If directors fail to exercise due care, then they may not use the business judgment rule as a shield to their conduct." *Davis v. Dyson,* 387 Ill. App. 3d 676, 326 Ill. Dec. 801, 900 N.E.2d 698, 714 (Ill. App. Ct. 2008). Here, the FDIC has pled sufficient facts to defeat the application of the business judgment rule.

Specifically, as outlined in the FDIC's response, the Complaint alleges that Defendants departed from their duty of care in originating, recommending, approving and/or administrating loans in the following ways:

- Failing to establish adequate debt repayment programs;
- Extending credit in excess of permitted LTV limits;
- Failing to adhere to required debt-to-income ratios;
- Extending credit outside the Bank's normal trade area;
- Permitting debt service coverage ratios below minimum requirements;
- Relying on outdated, unverified, and inadequate financial information for borrowers and guarantors;
- Failing to obtain information as to why existing lenders were not refinancing;
- Increasing risk through the creation of interest reserves;
- Failing to require principal reduction programs;
- Approving undesirable and highly speculative loans;

- Inadequately assessing project viability and risks;

- Failing to heed warnings of bank supervisory authorities;

- Failing to obtain adequate financial documentation for borrowers and guarantors;

- Failing to take steps to secure collateral; and

- Failing to obtain and review documentation concerning purported collateral prior to loan disbursement.

(*See, e.g.,* Compl. ¶¶ 25, 31, 37, 43, 49, 53, 59, 65, 71, 78, 84, 90, 96, 103, 109, 115, 120, 127, 131, 136, 143). These allegations are similar to those in *Spangler* and *Giannoulias* where the courts refused to apply the business judgment rule at the motion to dismiss stage. *See Spangler*, 836 F. Supp. 2d at 792; *Giannoulias*, 918 F. Supp. 2d. at 774.

Defendants' reliance on *Stamp v. Touche Ross & Co.*¸ 263 Ill. App. 3d 1010, 1016, 201 Ill. Dec. 184, 636 N.E.2d 616 (Ill. App. Ct. 1993), for the proposition that a court may not interfere with the business judgment of directors "absent allegations of bad faith, fraud, illegality or gross overreaching," is misplaced. (Mem. at 17.) First, in *Stamp*, the court stated the prerequisite for applying the business judgment rule is that a director have acted with due care. 263 Ill. App. 3d. at 1016. The court's statement regarding when a court should "interfere" with the judgment of a director related to how a court should apply the business judgment rule, not a determination of whether it applied. *Id*. Second, as in *Spangler*, here, the FDIC is "not merely alleging that Defendants misjudged the proper safeguards to be taken (as was the case in Stamp)," but that Defendants failed to obtain sufficient information, to review certain documents, and take certain steps necessary "to make rational business decisions regarding those safeguards," as well as violations of NCB policies. 836 F. Supp. 2d at 792. The Court, therefore, denies Defendants' motion to dismiss to the extent that it seeks dismissal based on an alleged failure by the FDIC to plead around the business judgment rule.

11

### 4. Claims Against Romano

The FDIC alleges that Romano acted negligently (Count IV), breached his fiduciary duties (Count V), and acted in a grossly negligent manner (Count VI) in sourcing and proposing various loans. (Compl. ¶129-144.) The Defendants argue that the Court should dismiss the FDIC's claims against Romano for lack of proximate cause. Specifically, Defendants argue that he could not have proximately caused any of the alleged damages because Romano did not serve on the OLC or the DLC, and therefore did not vote on the ultimate approval of the loans at issue. The Court disagrees.

"It is well-settled that a director will not be liable for losses to the corporation absent a showing that his act or omission proximately caused the subsequent losses." *F.D.I.C. v. Saphir*, 10 C 7009, 2011 WL 3876918, at *6 (N.D. Ill. Sept. 1, 2011) (citing *F.D.I.C. v. Bierman*, 2 F.3d 1424, 1434 (7th Cir. 1993)). "[Romano's] acts or omissions need not 'be the sole cause' of the bank's losses, however; instead '[they] need only be a substantial factor in producing the injury if the injury [was] reasonably foreseeable at the time of the wrongful act.'" *Saphir*, 2011 WL 3876918, at *6 (quoting *Bierman*, 2 F.3d at 1434).

Defendants attempt to add an additional requirement by arguing that the FDIC can only state a claim against Romano if he was the actual decision-maker for the decisions at issue. (Mem. at 25.) The law does not support Defendants' contention. A plaintiff may sufficiently assert a claim for negligence or breach of fiduciary duty by, for example, alleging that the defendant was involved with failed loans, even if that defendant did not have final approval of that loan. *See Mahajan*, 2012 WL 3061852, at *6 (stating "[w]ith respect to the arguments of the Officer Defendants that they lacked the necessary authority to make 'final' approvals of the Loss Loans, such defenses are insufficient to dismiss the allegations specifically pleaded against

them by the FDIC" where the Officer Defendants were "involved" in the failed loans). Indeed, allegations of actions other than approval of loans, such as failing to follow bank policies, improperly advising a board of directors, failing to institute procedures for making prudent loans, or failing to supervise a loan association's investment activities, are sufficient to defeat a motion to dismiss. *See, e,g, Saphir*, 2011 WL 3876918, at *7; *RTC v. O'Connell,* No. 94 C 4186, 1996 WL 153866, at *3 (N.D. Ill. Apr. 1, 1996).

Here, the FDIC alleges that Romano breached his duties and was negligent by originating, recommending, and/or administrating several Target Loans by:

- Recommending loans with inadequate repayment sources;
- Failing to obtain adequate financial documentation for borrowers and guarantors;
- Failing to obtain information as to why existing lenders were not refinancing;
- Failing to take steps to secure collateral; and
- Failing to obtain and review documentation concerning purported collateral prior to loan disbursement.

(Compl. ¶¶ 131, 136, 143.) The Complaint specifically alleges that Romano was Senior Vice President of Commercial Lending at NCB from 2005 to 2010 and had the responsibility for originating and recommending potential loans for the OLC and the DLC to consider. (*Id.* ¶¶ 11, 22, 131.) The Complaint also alleges that Romano "originated, recommended, and/or administered the Pine Ridge Club, Harp Des Plaines, GCC Merrillville Venture, and Eagle American/18 Leasing Target Loans." (*Id.* ¶ 22.) The Complaint further alleges that Romano drafted the LAMs for both the Pine Ridge Club and the GCC Merrillville Venture loans, both of which violated NCB's loan policy and safe and sound banking practices because repayment was highly speculative. (*Id.* ¶¶ 48, 52, 70.) Moreover, Romano drafted a LAM which revealed that the Harp Des Plaines loan violated NCB's loan policy and safe and sound banking practices

because repayment was highly speculative, as it was dependent on to-be-obtained construction loans. (*Id.* ¶ 58.) As for the Eagle American loan, the Complaint alleges that Romano "failed to require, as a condition precedent to funding," that NCB obtain titles to collateral, in violation of bank policy. (*Id.* ¶ 101.) Viewing the allegations in the light most favorable to the FDIC, these allegations sufficiently state claims for gross negligence, negligence, and breach of fiduciary duty against Romano. As such, Defendants' motion to dismiss the FDIC's claims against Romano for lack of proximate cause is denied.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss.

**DATED: September 3, 2013**

                                              ENTERED

                                              _____
                                            **AMY J. ST. EVE**
                                            U.S. District Court Judge